# EXHIBIT B

---

**See EXHIBIT "A"**

---

• **US9426452: "Faster state transitioning for continuous adjustable 3Deeps filter spectacles using multi-layered variable tint materials"**
   - **EoU/CC-US9426452: VDPP v. Volkswagen Surround View System (Claim 2) GSS**

https://docs.google.com/document/d/e/2PACX-1vQZxNz8_Q9JkPouZ-tYeUtpeI_kesinRXU4Cqp8hbDeFKO6EqXYKGRcZ3BE09TNY3nxgfIziHfKiC48/pub

---

**[A-01] Volkswagen wrote:**
Indeed, claim 2 amounts to nothing more than the longstanding practice of displaying picture-in-picture with superimposed graphics. These features have been commonplace in media broadcasts, sporting events, televisions, computers, movies, and video games for decades:

Here, the television "obtain[s]" two image streams, "stitch[es]" them together, superimposes graphics (e.g., volume level, channel number, menus, etc.) to form a "bridge frame" as VDPP construes it, and "display[s]" the combined result. Under VDPP's infringement theory, merely displaying this image on an LCD TV supplies the remaining elements. (stating that all LCD, LED, and OLED displays satisfy the "generate" steps, "blend" steps, "overlay" step, and "wherein" clause). Using a generic computer to perform such a longstanding practice does not make a claim patent-eligible. Nor does adding one abstract idea (e.g., picture-in-picture) to another (e.g., superimposed graphics).

Using a computer to practice mental or manual processes is similarly abstract. Plotagraph. Here, claim 2 uses known technology to practice a ubiquitous human activity— sight. In humans, the brain obtains a stream of image signals from each eye, stitches them together to form a composite image, and can superimpose imagined details onto the result. This is what it means to draw. The rest of the claim is, according to VDPP, practicable with known, extant display technology. Computer-implemented ideas performable by the human mind or by pencil and paper are abstract. So too is claim 2.

**[A-01] VDPP's argument:**
In this Section, VW has two figures.  However none of the figures show multiple videos being 'stitched' together as does Surround View - i.e. where stitching is defined as …  image stitching is the process of combining multiple photographic images with overlapping fields of view to produce a panorama or composite image.

And, without reference to the 2 figures provided by VW, it raises at least two (2) questions.
[Q 1] The figures may be from TVs that do not also have an associated storage and processor.
[Q 2] Are these figures before the disclosure date? [Note: The disclosure date is the submission date of the US 7,030,902 Patent].

**[A-02] Volkswagen wrote:**

Claim 2 also fails to recite an inventive concept. According to VDPP, the claims cover displaying composite images via conventional means. No new technology is required or recited. Nor does claim 2 recite how to achieve its result in an inventive way. Instead, the claim is "so result-focused, so functional, as to effectively cover any solution to an identified problem." Just as in Electric Power Group, "[n]othing in the claims, understood in light of the specification, requires anything other than off- the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information."

The '452 specification reinforces this understanding. The patent explains how the claimed "blending" can be "accomplished in any manner," including "in a conventional manner using conventional equipment" —even the human hand. '452 patent, 5:31-44 (emphases added). Indeed, the patent describes how these steps can be accomplished using existing tools such as "Adobe Photoshop." Id., 9:44-52. The patent also never discusses how to achieve the claimed "stitch[ing]," at best suggesting it simply combines two images. Id., 41:41-44, Fig. 28. This just restates the abstract idea and cannot supply an inventive concept. And as discussed above, "obtain[ing]" data and "display[ing]" results are routine computer processes. Nothing about this process is patentably inventive. Claim 2 also fails to improve computer technology. The '452 patent does not purport to invent the concept of picture-in-picture or superimposing graphics onto image streams. Nor could it, as this technology existed for decades:

**[A-02] VDPP's argument:**
In this Section, VW has two more figures.  However none of the figures show multiple videos being 'stitched' together as does Surround View - i.e. where stitching is defined as …  image stitching is the process of combining multiple photographic images with overlapping fields of view to produce a panorama or composite image.

And, without reference to the 2 figures provided by VW, it raises at least two (2) questions.
[Q 1] The figures may be from TVs that do not also have an associated storage and processor.
[Q 2] Are these figures before the disclosure date? [Note: The disclosure date is the submission date of the US 7,030,902 Patent].

**EXHIBIT "A"**



**JOSEPH M. SCHAFFNER**
571.203.2725
joseph.schaffner@finnegan.com

September 29, 2023

<u>VIA E-MAIL</u>

William P. Ramey III
Counsel for VDPP, LLC
Ramey LLP
5020 Montrose Blvd., Suite 800
Houston, Texas 77006

Re:   <u>VDPP, LLC v. Volkswagen Grp. of Am., Inc.</u>, 4:23-cv-02961 (S.D. Tex.)

Counsel:

We write on behalf of Volkswagen Group of America, Inc. ("Volkswagen") in response the complaint VDPP, LLC ("VDPP") filed on August 11, 2023, asserting infringement of U.S. Patent No. 9,426,452 ("the '452 patent"). As addressed below, we have serious concerns about the adequacy of VDPP's pre-suit investigation and allegations of infringement.

A cursory review of the '452 patent reveals that VDPP's claims are objectively baseless. VDPP cannot obtain any damages as a matter of law since it filed suit after the '452 patent expired yet failed to allege pre-suit notice as required by statute. *See* 35 U.S.C. § 287(a). Monetary relief is therefore impossible: VDPP cannot receive post-suit damages because the '452 patent has already expired, and it cannot receive pre-suit damages because it failed to comply with its marking obligations. In addition, the complaint seeks a "permanent injunction" and "future" damages on a patent that has already expired. This is nonsensical and forms part of a long pattern of factual errors pervading the complaint. Simply put, this case is frivolous.

These deficiencies are clear from the face of the patent and elementary principles of patent law. No reasonable litigant would bring much less maintain such a defective case. Doing so—and seeking a nuisance-value settlement offer to dismiss the case—is exceptional. Volkswagen demands that VDPP dismiss this suit *with prejudice* before Volkswagen or the Court incur further costs addressing VDPP's futile claims.

I.   **VDPP's Inadequate Marking Precludes Any and All Relief**

VDPP's claims are foreclosed as a matter of law. A patentee cannot obtain an injunction on an expired patent. *E.g.*, *Lans v. Digit. Equip. Corp.*, 252 F.3d 1320, 1328 (Fed. Cir. 2001) ("[A] district court cannot enjoin [a defendant] from infringing an expired patent."). And damages accrue only for acts occurring after the patentee notifies the defendant of the alleged infringement. 35 U.S.C. § 287(a). Patentees may satisfy this notice requirement constructively—i.e., by marking

Mr. William P. Ramey III
September 29, 2023
Page 2

patented products—or through providing actual notice to an alleged infringer. *See Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 950 F.3d 860, 864 (Fed. Cir. 2020) ("*Arctic Cat II*"); *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017) ("*Arctic Cat I*"). When a patentee fails to provide this notice before a patent expires, the patentee cannot receive damages. *See, e.g.*, *Lans*, 252 F.3d at 1328.

Here, the '452 patent expired on January 22, 2022.[1] VDPP first notified Volkswagen of its alleged infringement through service of a complaint filed on August 11, 2023. *See* 35 U.S.C. § 287(a). The complaint does not allege that VDPP (or any of its licensees) provided actual or constructive notice before this date. *Id.* Thus, the '452 patent expired before VDPP gave Volkswagen notice of alleged infringement. VDPP cannot receive damages as a matter of law. 35 U.S.C. § 287(a); *Lans*, 252 F.3d at 1328; *see also e-Watch Inc. v. Avigilon Corp.*, No. 13-347, 2013 WL 5231521, at *3 (S.D. Tex. Sept. 13, 2013) (dismissing all pre-suit damages for failure to comply with the marking statute). Nor can VDPP seek an injunction for an expired patent. *E.g.*, *Lans*, 252 F.3d at 1328. There is no relief VDPP can obtain from this case.

Further, VDPP cannot cure these defects by amending its complaint in good faith. The burden of pleading and proving compliance with the marking requirement falls on the patentee. *See Arctic Cat I*, 876 F.3d at 1366 (citing *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996); *Dunlap v. Schofield*, 152 U.S. 244, 248 (1894)). That burden includes alleging compliance by the patentee's licensees. *See Arctic Cat II*, 950 F.3d at 864; *Arctic Cat I*, 876 F.3d at 1366. Failure to plead proper notice warrants dismissal at the Rule 12(b) stage. *E.g.*, *Lans*, 252 F.3d at 1328; *e-Watch*, 2013 WL 5231521, at *3 ("The Federal Circuit[] specifically allows addressing the § 287(a) issue through a motion to dismiss.").

VDPP has not and cannot meet that burden here. As VDPP knows, VDPP previously asserted the '452 patent against numerous companies, such as Facebook, Acer, and TTE Technology. *See, e.g.*, *VDPP LLC v. Facebook Techs., LLC*, No. 3:19-cv-4597 (N.D. Cal.); *VDPP LLC v. Acer Am. Corp.*, 3:19-cv-4571 (N.D. Cal.); *VDPP LLC v. TTE Tech., Inc.*, No. 5:19-cv-02019 (C.D. Cal.). Those cases ended in settlements ostensibly covering products such as Facebook's Portal, Acer's Liquid Smartphones and Iconia One tables, and TTE's Alcatel mobile phones and tablets. *See Facebook*, Dkt. 1 ¶ 15, Dkt. 71; *Acer*, Dkt. 1 ¶ 16, Dkt. 38; *TTE*, Dkt. 1 ¶ 17, Dkt. 25. For VDPP to allege constructive notice, *all* these products must comply with § 287(a). *See Arctic Cat II*, 950 F.3d at 864-65; *Arctic Cat I*, 876 F.3d at 1366. Volkswagen doubts VDPP can show in good faith these products mark the '452 patent. Nor do we see how VDPP could plausibly allege prior actual notice, as VDPP fails to allege that it ever notified Volkswagen of alleged infringement prior to this action. Thus, VDPP cannot amend its complaint to plead prior notice—actual or constructive—foreclosing all damages and making amendment futile. *See Arctic Cat II*, 950 F.3d at 864-65; *Arctic Cat I*, 876 F.3d at 1367.

---

[1] The '452 patent claims priority to U.S. Patent No. 7,030,902, filed on January 22, 2002. The '452 patent thus expired on January 22, 2022. *See* 35 U.S.C. § 154(a)(2).

FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP

VDPP also cannot fix this problem by asserting different claims. Every claim of the '452 patent claims an apparatus. *See* '452 patent, claims 1-4. VDPP thus cannot avoid the marking requirement by asserting only method claims. *See, e.g., Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1538-39 (Fed. Cir. 1993) ("Where [a] patent contains both apparatus and method claims, … a party is obligated to [mark] if it intends to avail itself of the constructive notice provisions of section 287(a).").

In sum, VDPP's complaint sets out a baseless case. VDPP cannot receive post-suit damages or an injunction on an expired patent. And VDPP cannot receive pre-suit damages because it did not and cannot comply with § 287(a). Any adequate pre-suit investigation would have uncovered these glaring errors. VDPP had no good faith basis to bring this case in August, and it has no good faith basis to maintain it now. VDPP should dismiss this suit with prejudice before the parties or Court invest further time on this frivolous suit.

## II.   VDPP's Lack of Notice Precludes Other Relief

VDPP's failure to comply with the marking statute precludes other relief. For example, VDPP's complaint alleges that Volkswagen indirectly and willfully infringes the '452 patent. But these theories both require, among other things, knowledge of the asserted patent and a specific intent to infringe or encourage infringement. *See, e.g., Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 988 (Fed. Cir. 2021) ("Knowledge of the asserted patent and evidence of infringement is necessary, but not sufficient, for a finding of willfulness. Rather, willfulness requires deliberate or intentional infringement."); *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009); *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305-06 (Fed. Cir. 2006) (en banc).

Here, VDPP does not and cannot allege Volkswagen knew about the '452 patent before the patent expired. Volkswagen thus lacked the requisite knowledge and intent for indirect and willful infringement as a matter of law. *See Bayer*, 989 F.3d at 988; *Vita-Mix*, 581 F.3d at 1328-29. And after the '452 patent expired in January 2022, all alleged infringement (direct, indirect, willful, or otherwise) became impossible. *E.g., Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S 915, 921 (2014) ("[I]nducement liability may arise 'if, but only if there is direct infringement." (internal alterations omitted)); *John Bean Techs. Corp. v. Morris & Assocs., Inc.*, 988 F.3d 1334, 1341 (Fed. Cir. 2021) ("If there is no infringement, there cannot be willful infringement."); *Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1550 (Fed. Cir. 1994) ("[T]here can be no infringement once [a] patent expires."). No plausible set of facts would entitle VDPP to assert willful or indirect infringement.

Accordingly, VDPP's claims for indirect and willful infringement are baseless. It was unreasonable to raise them in the complaint, and it is unreasonable to continue pursuing them now.

FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP

Mr. William P. Ramey III
September 29, 2023
Page 4

### III. The Asserted Claim Recites Patent-Ineligible Subject Matter

VDPP's claims lack merit for another, independent reason. VDPP's sole asserted claim—claim 2 of the '452 patent—recites ineligible subject matter under 35 U.S.C. § 101. Asserting this claim is independently exceptional for this reason alone.

Courts assess patent eligibility under the two-part test of *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014). Under this test, a claim is ineligible under § 101 when it is (1) directed to an abstract idea that (2) fails to recite significantly more. *Alice*, 573 U.S. at 217-18. Abstract ideas include prevalent practices and mental methods performable by the human mind. *Id.* at 219; *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1371 (Fed. Cir. 2011). Claims are similarly abstract when they are directed to "collecting information, analyzing it, and displaying certain results." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016). At step two, the claims must recite more than "well-understood, routine, conventional activity" to be patentable. *E.g.*, *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1340 (Fed. Cir. 2017).

#### A. VDPP's asserted claim is directed to the abstract idea of combining images to form a composite image

Here, claim 2 covers the abstract idea of combining images to form a composite image. The claim generically recites "obtain[ing]" two images, "stitch[ing]" them together, "modif[ying]" them, "blend[ing]" the result with an undefined "bridge frame," "combin[ing]" them, and "display[ing]" the composite. These elements are like those found ineligible at the Federal Circuit. *See, e.g.*, *Yu v. Apple Inc.*, 1 F.4th 1040, 1043 (Fed. Cir. 2021) (discussing the abstract idea of "taking two pictures … and using one picture to enhance the other in some way"); *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017) (using image data "combined to form a composite" is abstract); *Electric Power Group*, 830 F.3d at 1352-54 (collecting data from multiple sources, analyzing it, and displaying combined results is abstract); *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1350-51 (Fed. Cir. 2014) ("taking two data sets and combining them into a single data set" is abstract). This Court and others have arrived at the same conclusion. *See, e.g.*, *Plotagraph, Inc. v. Lightricks, Ltd.*, 620 F. Supp. 3d 591, 600 (S.D. Tex. 2022) ("shifting pixels to create the illusion of movement within an image" is abstract); *FullView, Inc. v. Polycom, Inc.*, 485 F. Supp. 3d 1156, 1161-62 (N.D. Cal. 2020) ("merging images corresponding to [] individual fields of view to produce [a] composite image" is abstract).

The breadth of VDPP's infringement allegations confirms this result. *See ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015) ("[I]t is often useful to determine the breadth of the claims in order to determine whether the claims extend to cover a[n abstract idea].").  According to VDPP, the claims are broad enough to capture combining two image streams from any source, superimposing a graphic, and displaying the result via any LCD screen:

FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP

Mr. William P. Ramey III
September 29, 2023
Page 5



*See* Compl., Ex. B, at 4-7.

VDPP's representations underscore the abstractness of claim 2. According to VDPP's own allegations, any LCD screen automatically satisfies the claimed "generate" steps, "blend" steps, "overlay" step, and "wherein" clause. *Id.* This dispenses with most of the claim. And under VDPP's infringement theory, superimposing a graphic onto an image—a long prevalent practice—creates the claimed "bridge frame." *Id.* The only remaining steps consist of obtaining images, combining them, and displaying the result. '452 patent, claim 2. These processes are quintessentially abstract. *See, e.g.*, *RecogniCorp*, 855 F.3d at 1327 ("[T]aking two data sets and combining them into a single data set … [is] directed to an abstract idea.") (quoting *Digitech*, 758 F.3d at 1350-51); *Electric Power Group*, 830 F.3d at 1352-54 (collecting data from multiple sources, analyzing it, and displaying combined results is abstract). Nothing about claim 2 is patentably concrete.

Indeed, claim 2 amounts to nothing more than the longstanding practice of displaying picture-in-picture with superimposed graphics. These features have been commonplace in media broadcasts, sporting events, televisions, computers, movies, and video games for decades:



Here, the television "obtain[s]" two image streams, "stitch[es]" them together, superimposes graphics (e.g., volume level, channel number, menus, etc.) to form a "bridge frame" as VDPP construes it, and "display[s]" the combined result. Under VDPP's infringement theory, merely

FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP

Mr. William P. Ramey III
September 29, 2023
Page 6

displaying this image on an LCD TV supplies the remaining elements. *See* Compl., Ex. B, at 4-7 (stating that all LCD, LED, and OLED displays satisfy the "generate" steps, "blend" steps, "overlay" step, and "wherein" clause). Using a generic computer to perform such a longstanding practice does not make a claim patent-eligible. *E.g.*, *Yu*, 1 F.4th at 1043-44; *Plotagraph*, 620 F. Supp. 3d at 599. Nor does adding one abstract idea (e.g., picture-in-picture) to another (e.g., superimposed graphics). *RecogniCorp*, 855 F.3d at 1327.

Using a computer to practice mental or manual processes is similarly abstract. *Plotagraph*, 620 F. Supp. 3d at 599; *see also Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017). Here, claim 2 uses known technology to practice a ubiquitous human activity—sight. In humans, the brain obtains a stream of image signals from each eye, stitches them together to form a composite image, and can superimpose imagined details onto the result. This is what it means *to draw*. The rest of the claim is, according to VDPP, practicable with known, extant display technology. Computer-implemented ideas performable by the human mind or by pencil and paper are abstract. *Plotagraph*, 620 F. Supp. 3d at 598-600. So too is claim 2.

### B. The asserted claim recites conventional components with no inventive concept

Claim 2 also fails to recite an inventive concept. According to VDPP, the claims cover displaying composite images via conventional means. *See* Compl., Ex. B, at 4-7. No new technology is required or recited. Nor does claim 2 recite *how* to achieve its result in an inventive way. Instead, the claim is "so result-focused, so functional, as to effectively cover any solution to an identified problem." *Affinity Labs of Tex., LLC v. DirecTV, LLC*, 838 F.3d 1253, 1265 (Fed. Cir. 2016) (quoting *Electric Power Group*, 830 F.3d at 1356). Just as in *Electric Power Group*, "[n]othing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information." 830 F.3d at 1355.

The '452 specification reinforces this understanding. The patent explains how the claimed "blending" can be "accomplished *in any manner*," including "in a *conventional manner* using *conventional equipment*"—even the human hand. '452 patent, 5:31-44 (emphases added). Indeed, the patent describes how these steps can be accomplished using existing tools such as "Adobe Photoshop." *Id.*, 9:44-52. The patent also never discusses how to achieve the claimed "stitch[ing]," at best suggesting it simply combines two images. *Id.*, 41:41-44, Fig. 28. This just restates the abstract idea and cannot supply an inventive concept. *See ChargePoint*, 920 F.3d at 774 (citing *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018)). And as discussed above, "obtain[ing]" data and "display[ing]" results are routine computer processes. *See, e.g., Electric Power Group*, 830 F.3d at 1355-56. Nothing about this process is patentably inventive.

Claim 2 also fails to improve computer technology. The '452 patent does not purport to invent the concept of picture-in-picture or superimposing graphics onto image streams. Nor could it, as this technology existed for decades:

FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP

Mr. William P. Ramey III
September 29, 2023
Page 7

 

Providing these functions via conventional displays and processors fails to provide an inventive concept. *See Plotagraph*, 620 F. Supp. 3d at 601-02 ("Shifting pixels using existing computer capabilities is not an improvement in computer functionality."). Using conventional technology as a backdrop on which to practice an abstract idea is not inventive. *See, e.g.*, *Yu*, 1 F.4th at 1045; *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016) (finding it uninventive to use known technology as "merely a conduit for the abstract idea").

Claim 2 of the '452 patent is thus facially invalid under 35 U.S.C. § 101 and black-letter caselaw. It is unreasonable for VDPP to assert it.

### IV. VDPP's Venue Allegations Are Incorrect and Conflate Volkswagen with Another Company

VDPP's complaint further fails to make out a plausible case for venue under 28 U.S.C. §§ 1391(b) and 1400(b). First, VDPP's complaint falsely states that Volkswagen is a Delaware corporation. Compl. ¶ 2. It is not, and its public corporate registration documents make this plain. Volkswagen Group of America is incorporated in New Jersey with a principal place of business in Virginia. Second, VDPP claims that Volkswagen has an established place of business at "1 Lone Star Pass, San Antomio [sic], Texas 78264." Compl. ¶ 2. But this is not a Volkswagen location. It is a Toyota location:



FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP

Mr. William P. Ramey III
September 29, 2023
Page 8

Third, San Antonio is not located in the Southern District of Texas. It sits in the *Western* District of Texas. *See, e.g.*, https://www.txwd.uscourts.gov/court-information/office-locations/.

VDPP's complaint thus fails to allege proper venue. It incorrectly ascribes Toyota's venue to Volkswagen and then admits such venue should be elsewhere. When considered in combination with the other faults discussed above, it is clear that VDPP did not conduct an adequate investigation into this case before filing this suit.

\*   \*   \*

In light of the foregoing, there is no plausible set of facts VDPP could plead that would entitle it to relief. Even under the most charitable reading of its complaint, VDPP has asserted (1) an invalid patent (2) for which no damages are due (3) under groundless legal theories (4) in the wrong court. This case is, again, frivolous.

Volkswagen hopes the parties can bring a swift end to this matter and avoid incurring unnecessary legal fees and Court burdens. Volkswagen therefore asks VDPP to dismiss its case with prejudice by **October 6, 2023**, in which case Volkswagen will not seek recovery of its attorneys' fees. If VDPP would like to discuss the above issues before this date, we would be happy to do so. If VDPP fails to dismiss its case by October 6, however, Volkswagen will have no choice but to prepare and file a motion to dismiss highlighting these problems by the deadline of October 16, 2023.

Volkswagen encourages VDPP to research the above issues so that the parties can resolve this matter efficiently.

Sincerely,

Joseph M. Schaffner

*Attorney for Defendant Volkswagen Group of America, Inc.*