**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| VDPP, LLC, | |
| Plaintiff, | CIVIL ACTION NO: 4:23-cv-2961 |
| v. | **JURY TRIAL DEMANDED** |
| VOLKSWAGEN GROUP OF AMERICA, INC., | |
| Defendant. | |

**DEFENDANT VOLKSWAGEN GROUP OF AMERICA, INC.'S
<u>MOTION TO DECLARE CASE EXCEPTIONAL</u>**

## TABLE OF CONTENTS

I.      NATURE AND STAGE OF PROCEEDING ...................................................... 1

II.     ISSUES TO BE RULED ON AND SUMMARY OF ARGUMENT ................................ 1

III.    BACKGROUND ........................................................................................ 2

        A.      VDPP's Error-Riddled Complaint Asserts Legally Impossible Claims ................ 2

        B.      Volkswagen Notifies VDPP of the Errors, but VDPP Ignores Them.................... 3

        C.      Volkswagen is Forced to Continue Defending VDPP's Meritless Claims............. 4

        D.      VDPP Falsely Claims it Has No Settlement Agreements...................................... 5

        E.      VDPP's Only Response on Marking: The NPE Fallacy........................................ 6

        F.      VDPP Repeats the NPE Fallacy at Oral Argument ................................................ 8

        G.      VDPP Serves Discovery Requests, Twice, Despite the Stay of Discovery........... 8

        H.      The Court Dismisses VDPP's Complaint ............................................................. 9

        I.      Throughout the Case, VDPP Demands Nuisance-Level Settlements.................... 9

IV.     LEGAL STANDARDS ................................................................................ 10

V.      ARGUMENT .......................................................................................... 12

        A.      Volkswagen is the "Prevailing Party" Under 35 U.S.C. § 285............................ 12

        B.      This Case is "Exceptional" Under 35 U.S.C. § 285............................................ 12

        C.      VDPP and its Counsel Should Jointly and Severally be Liable Under 28 U.S.C. § 1927 and the Court's Inherent Authority ............................................................. 18

        D.      If the Court Grants this Motion, Volkswagen Respectfully Requests an Accounting at that Time........................................................................................ 21

VI.     CONCLUSION......................................................................................... 22

## **TABLE OF AUTHORITIES**

**Cases**

*AdjustaCam, LLC v. Newegg, Inc.*,
  861 F.3d 1353 (Fed. Cir. 2017) ................................................................... 10, 14, 15

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
  876 F.3d 1350 (Fed. Cir. 2017) ........................................................................ 7, 8, 14

*Arctic Cat Inc. v. Bombardier Recreational Prods., Inc.*,
  950 F.3d 860 (Fed. Cir. 2020) ............................................................................ passim

*Baker v. Urban Outfitters, Inc.*,
  431 F. Supp. 2d 351 (S.D.N.Y. 2006) ................................................................ 20, 21

*Bayer CropScience AG v. Dow AgroSciences LLC*,
  851 F.3d 1302 (Fed. Cir. 2017) ............................................................................... 11

*Blackbird Tech LLC v. Health In Motion LLC*,
  944 F.3d 910 (Fed. Cir. 2019) .......................................................................... 13, 16

*Blue v. U.S. Dept. of Army*,
  914 F.2d 525 (4th Cir. 1990) ................................................................................... 19

*Chaffin v. Braden*,
  Civ. A. No. 6:14-27, 2016 WL 4076705 (S.D. Tex. Aug. 1, 2016) ....................... 22

*Edwards v. Gen. Motors Corp.*,
  153 F.3d 242 (5th Cir. 1998) ................................................................................... 20

*Eon-Net LP v. Flagstar Bancorp*,
  653 F.3d 1314 (Fed. Cir. 2011) ............................................................................... 13

*EscapeX IP LLC v. Google LLC*,
  No. 22-cv-08711, 2023 WL 5257691 (N.D. Cal. Aug. 16, 2023) ........................... 18

*Hacienda Records, LP v. Ramos*,
  No. 2:14-cv-19, 2019 WL 93306 (S.D. Tex. Jan. 2, 2019) ........................... 11, 20, 21

*ICU Med., Inc. v. Alaris Med. Sys., Inc.*,
  558 F.3d 1368 (Fed. Cir. 2009) ............................................................................... 15

*In re Rembrandt Techs. LP Patent Litig.*,
  899 F.3d 1254 (Fed. Cir. 2018) ......................................................................... 10, 18

*Inventor Hldgs., LLC v. Bed Bath & Beyond, Inc.*,
  876 F.3d 1372 (Fed. Cir. 2017) ................................................................... 11, 14, 18

*IPVX Patent Hldgs., Inc. v. Voxernet LLC*,
    No. 5:13-cv-01708, 2014 WL 5795545 (N.D. Cal. Nov. 6, 2014) ................................... 15, 17

*Iris Connex, LLC v. Dell, Inc.*,
    235 F. Supp. 3d 826 (E.D. Tex. 2017) ............................................................................ passim

*Lawyers Title Ins. v. Doubletree Partners, LP*,
    739 F.3d 848 (5th Cir. 2014) ................................................................................................... 11

*Mata v. Caring for You Home Health, Inc.*,
    94 F. Supp. 3d 867 (S.D. Tex. Mar. 27, 2015) ..................................................................... 22

*Maxwell v. J. Baker, Inc.*,
    86 F.3d 1098 (Fed. Cir. 1996) ................................................................................................. 7

*Nat'l Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*,
    676 F. App'x 967 (Fed. Cir. 2017) ........................................................................................ 13

*NetSoc, LLC v. Chegg Inc.*,
    No. 18-cv-10262, 2020 WL 7264162 (S.D.N.Y. Dec. 10, 2020) ........................................... 17

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    572 U.S. 545 (2014) .................................................................................................... 1, 2, 10

*Ortiz & Assocs. Consulting, LLC v. VIZIO, Inc.*,
    No. 3:23-cv-00791, 2024 WL 815553 (N.D. Tex. Feb. 27, 2024) ................................... 18, 22

*Porter v. Farmers Supply Service, Inc.*,
    790 F.2d 882 (Fed. Cir. 1986) ............................................................................................... 14

*Raniere v. Microsoft Corp.*,
    887 F.3d 1298 (Fed. Cir. 2018) ............................................................................................. 12

*Ratliff v. Stewart*,
    508 F.3d 225 (5th Cir. 2007) ................................................................................................. 11

*Rothschild Connected Devices Innovations, LLC v. Guardian Protection Servs., Inc.*,
    858 F.3d 1383 (Fed. Cir. 2017) ....................................................................................... 16, 17

*Royal Oak Entm't, LLC v. Royal Oak, Mich*,
    486 F. Supp. 2d 675 (E.D. Mich. 2007) ............................................................................ 19, 20

*See In re PersonalWeb Techs. LLC*,
    85 F.4th 1148 (Fed. Cir. 2023) ........................................................................................ 11, 14

*Soar Tools, LLC v. Mesquite Oil Tools, Inc.*,
    No. 5:19-cv-243, 2022 WL 1447946 (N.D. Tex. Feb. 9, 2022) ............................................. 15

*Summit Data Sys., LLC v. EMC Corp.*, C.A.

No. 10-749, 2014 WL 4955689, (D. Del. Sept. 24, 2014) ....................................................... 13

*SunTiger Inc. v. Telebrands Advert. Corp.*,
   No. 97-423, 2004 WL 3217731 (E.D. Va. Mar. 29, 2004) ...................................................... 21

*TechRadium, Inc. v. FirstCall Network, Inc.*,
   No. H-13-2487, 2015 WL 862326 (S.D. Tex. Feb. 27, 2015) ................................................. 16

*Thermolife Int'l LLC v. GNC Corp.*,
   922 F.3d 1347 (Fed. Cir. 2019) ....................................................................................... 11, 13, 18

*Traxcell Techs., LLC v. Huawei Techs. USA, Inc.*,
   No. 2:17-cv-42, 2023 WL 2625948 (E.D. Tex. Mar. 24, 2023) ............................................. 18

*Verna IP Hldgs., LLC v. Alert Media, Inc.*,
   No. 6:21-cv-00422, 2023 WL 5918320 (W.D. Tex. Sept. 11, 2023) ...................................... 18

*W. Heritage Ins. v. Robertson*,
   224 F.3d 764 (Table), 2000 WL 992178 (5th Cir. 2000) ...................................... 11, 19, 20, 21

*W.W. Home Prods., Inc. v. Bed, Bath & Beyond, Inc.*,
   No. 11-cv-3633, 2015 WL 1573325 (S.D.N.Y. Apr. 9, 2015) ................................................. 21

*WPEM, LLC v. SOTI Inc.*,
   837 F. App'x 773 (Fed. Cir. 2020) ............................................................................................ 11, 13

*WPEM, LLC v. SOTI Inc.*,
   No. 2:18-cv-00156-JRG, 2020 WL 555545 (E.D. Tex. Feb. 4, 2020) ............................... 17, 18

*ZT IP, LLC v. VMware, Inc.*,
   No. 3:22-cv-0970, 2023 WL 1785769 (N.D. Tex. Feb. 6, 2023) ............................................ 18

**Statutes**

28 U.S.C. § 1927 ...................................................................................................... 2, 11, 19, 21

35 U.S.C. § 101 ................................................................................................................... 3, 4

35 U.S.C. § 285 ............................................................................................................. passim

35 U.S.C. § 287 ............................................................................................................. passim

**Rules**

Fed. R. Civ. P. 41 ................................................................................................................... 20

## I.     NATURE AND STAGE OF PROCEEDING

This patent lawsuit was dismissed with prejudice on March 27, 2024.  Dkt. 33, 34.[1]

## II.    ISSUES TO BE RULED ON AND SUMMARY OF ARGUMENT

An "exceptional" case under 35 U.S.C. § 285 "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).  This case was exceptional, and Volkswagen respectfully requests an award of attorneys' fees.

Nothing about VDPP's complaint was reasonable.  It sought legally impossible remedies such as "future infringement" damages and a "permanent injunction" on an expired patent.  It misstated Volkswagen's state of incorporation.  It alleged venue by copying-and-pasting misspellings from a complaint against a different defendant in a different venue.  It alleged indirect and willful infringement yet never alleged Volkswagen knew of the patent before it expired.  And most critically, VDPP never alleged compliance with the patent marking statute, 35 U.S.C. § 287(a).  When Volkswagen alerted VDPP to these errors early in the case, VDPP ignored them.  To this day, VDPP has never articulated *any position* on marking for its licensees, much less a *reasonable* one.

Zealous advocacy does not explain VDPP's mistakes.  They result from inattention.  VDPP's carelessness permeated every facet of its case.  As one example, VDPP failed to timely serve initial disclosures and identify license agreements involving the asserted patent.  Then, after Volkswagen prompted it to do so, VDPP's counsel claimed it "ha[d] no settlement agreements to disclose."  This was false.  Volkswagen pressed again, and eventually VDPP produced *eleven*

---

[1] Exhibits G-Q are being filed under seal.

*settlement agreements* covering the '452 patent. Every one of these agreements proved the crux of Volkswagen's marking argument: *none* of VDPP's licensees was required to mark, and thus VDPP could not comply with § 287(a).

VDPP's negligence impacted issues large and small. VDPP failed to appear for the hearing on Volkswagen's motion to dismiss and joined the hearing only after repeated calls by Volkswagen's counsel (at the Court's request). VDPP also served multiple discovery requests *after* agreeing to stay discovery before the Court. And VDPP served initial disclosures pertaining to a different plaintiff and different patents.

This was not a typical, "mine-run" case, either substantively or in terms of VDPP's conduct. *Octane Fitness*, 572 U.S. at 555. VDPP mishandled virtually every legal issue, factual issue, communication, pleading, and hearing. Rather than ensure the case had merit, VDPP focused only on making repeated demands for nuisance-level settlements. Congress enacted 35 U.S.C. § 285 and 28 U.S.C. § 1927 specifically to address cases like this.

## III.    BACKGROUND

### A.    VDPP's Error-Riddled Complaint Asserts Legally Impossible Claims

VDPP's original complaint of August 11, 2023, erroneously styled "PLAINTIFF'S ORIGINAL AMENDED COMPLAINT," asserted infringement of U.S. Patent No. 9,426,452 ("the '452 patent"). Dkt. 1. The patent expired on January 22, 2022. Dkt. 33 at 1.

Despite the '452 patent's expiration more than a year before VDPP filed suit, VDPP sought relief available only for unexpired patents. VDPP sought damages for "future infringement" four times in the complaint, and even alleged that "future infringement will be willful as a matter of law." Dkt. 1 § V(f). VDPP also sought "a permanent injunction enjoining [Volkswagen] . . . from infringing the" patent. *Id*. Of course, it is legally impossible to find future infringement or impose an injunction based on an expired patent. *See* Dkt. 13 at 6.

2

VDPP also asserted other legally-foreclosed claims.  According to VDPP, Volkswagen "has and continues to induce infringement" and to "contributorily infringe."  Dkt. 1 ¶¶ 10-11. These claims are doubly impossible: they require knowledge of the asserted patent while it was in force (which VDPP failed to allege), and they require continued infringement (impossible for an expired patent).  *See* Dkt. 13 at 9-10; *see also* Dkt. 1 ¶¶ 10-12 (alleging Volkswagen "continue[s] to" infringe five times).  The same error made VDPP's claims of willful infringement (Dkt. 1 § V(e)-(f)) impossible, since willfulness also requires knowledge of the asserted patent, and one cannot willfully infringe an expired patent post-expiration.  *See* Dkt. 13 at 9-10.

VDPP could thus only hope to seek past damages.  But past damages are limited by statute. 35 U.S.C. § 287(a).  VDPP's complaint entirely failed to address this issue.  This omission was critical because alleging compliance with § 287 is a pleading burden for patentees.  *See* Dkt. 13 at 3, 5.  As later became clear, *infra* § III.D, VDPP could *never* allege compliance with § 287 because it has numerous licenses to the '452 patent, and none requires VDPP's licensees to mark covered products with the '452 patent number.

Other errors also plagued VDPP's complaint.  VDPP alleged that Volkswagen is a Delaware corporation (Dkt. 1 ¶ 2), but it is a New Jersey corporation.  *See* Dkt. 13 at 11; Dkt. 33 at 5.  VDPP also incorrectly pointed to a Toyota facility in "San Antomio [*sic*], Texas," which is not located in the Southern District in any event.  Dkt. 13 at 10; Dkt. 33 at 5-6.

### B.    Volkswagen Notifies VDPP of the Errors, but VDPP Ignores Them

Believing this case should be resolved without motion practice, Volkswagen sent an eight-page, single-spaced letter to VDPP on September 29, 2023, detailing the substantive defects in VDPP's complaint.  Ex. A.  These defects included (1) failure to mark under § 287(a), (2) no factual predicates for indirect infringement, (3) no factual predicates for willful infringement, (4) invalidity under 35 U.S.C. § 101, and (5) erroneous allegations of venue.  Volkswagen

substantiated its positions with applicable law and facts.  Volkswagen then asked VDPP to voluntarily dismiss its case to avoid unnecessary briefing.  *Id*. at 8.

Volkswagen followed up with VDPP on October 4, 2023, October 6, 2023, and October 11, 2023, seeking to have a call about dismissing the case.  Ex. C.  Eventually, VDPP provided its written response on October 11, 2023.  *Id*.

VDPP's response was baffling.  Ex. B.  VDPP provided a document lacking letterhead, salutations, or other hallmarks of a letter.  *Id*. at 1-2.  This document failed to address the issues raised in Volkswagen's letter, except for a partial response on eligibility under § 101.  And even this response appeared to be the raw output of an artificial intelligence tool[2] rather than human analysis.  Specifically, this document is structured in input-output terms, with a first "[A-01]" being "Volkswagen wrote" (i.e., copied text from Volkswagen's letter) and a second "[A-01]" being "VDPP's argument."  *Id*. at 1.  The document incremented the input-output number by one (i.e., "[A-02]") for a second response and merged Volkswagen's letter into the document itself.  *Id.* at 1-3.  Regardless of how VDPP made its document, it ignored the critical issues dooming its case.  Not only did VDPP fail to offer a reasonable position on marking, indirect infringement, willful infringement, or venue, it provided no position on these issues *at all*.  Ex. B.

### C.    Volkswagen is Forced to Continue Defending VDPP's Meritless Claims

Lacking a response from VDPP on the defects in its complaint, Volkswagen was forced to prepare and file its motion to dismiss.  Dkt. 13.  It also was forced to develop its defenses, prepare and serve initial disclosures, review VDPP's late production of licenses, submit scheduling and discovery orders, and participate in the hearing on Volkswagen's motion.  While Volkswagen proposed staying discovery pending its motion, VDPP refused.  Ex. F (email of Nov. 15, 2023).

---

[2] VDPP's claim chart attached to its complaint cites an artificial intelligence tool from OpenAI, the makers of ChatGPT.  *See* Dkt. 1-2 at 4 (citing "chat.openai.com").

### D. VDPP Falsely Claims it Has No Settlement Agreements

After Volkswagen's September 29 letter and October 13 motion to dismiss, VDPP's marking failure reflected a central issue in the case. Volkswagen thus anticipated getting closure on this issue in initial disclosures, which required the parties to disclose "any settlement agreements relevant to the subject matter of this action." Dkt. 6 at 2. But rather than provide this required information, VDPP's initial disclosures presented just further errors. Ex. E.

First, as shown below, the disclosures pertained to a different plaintiff:

> **PLAINTIFF WIRELESS DISCOVERY LLC'S INITIAL DISCLOSURES TO DEFENDANT**

*Id*. at 1. Second, they addressed different patents—patents relating to "global positioning methods," a technology unrelated to the '452 patent. *See id.* at 2 (incorrectly alleging the patent relates to connecting mobile devices and services such as "SMS" or "instant messaging").

Critically, for the marking issue, VDPP failed to disclose any settlement agreements. *Id*. at 4-5 (committing to produce agreements "if any exist" in the future). Volkswagen thus inquired with VDPP about this on November 24, 28, and 30, 2023, asking when VDPP will serve corrected and compliant initial disclosures. Ex. F. In response, VDPP stated: "*As of this time we have no settlement agreements to disclose*. We have agreements in principle and will update once we have final, signed agreements." *Id*. (emphasis added).

This representation was false. After Volkswagen reminded VDPP that several of its prior litigations involving the '452 patent settled, *id*., VDPP then produced *eleven settlement agreements* licensing the '452 patent. VDPP executed these agreements between February 2018 and February 2023—all well before VDPP's representation that it "ha[d] no settlement agreements to disclose." *See* Ex. G (Feb. 9, 2018); Ex. H (Nov. 8, 2018); Ex. I (Nov. 15, 2018); Ex. J (Feb. 17, 2020); Ex. K

(Mar. 18, 2020); Ex. L (May 5, 2020); Ex. M (May 22, 2020); Ex. N (July 12, 2020); Ex. O (July 22, 2020); Ex. P (Apr. 29, 2022); Ex. Q (Feb. 23, 2023).

When VDPP made this misrepresentation, VDPP knew of these agreements because it entered them. *See, e.g.*, Ex. J at 8 (signed by Ronald S. Karpf, VDPP's President). The claim that VDPP "ha[d] no settlement agreements to disclose" shows that *VDPP's counsel* did not analyze, or even confirm the existence of, these eleven agreements before filing suit.

This was not a trivial oversight. The settlement agreements eventually produced proved Volkswagen's point on marking—*none of the agreements required VDPP's licensees to mark with the '452 patent number* (or any patent number). Of the eleven agreements, ten did not address patent marking at all, and one expressly repudiated a duty to mark by the licensee. Ex. I § 6.15. Had VDPP reviewed these agreements before filing suit, it would have known that it could never plead compliance with § 287(a) and thus could not recover pre-suit damages. For an expired patent like the '452, this basic element of pre-suit diligence would have obviated this entire lawsuit.

### E.   VDPP's Only Response on Marking: The NPE Fallacy

While VDPP ignored Volkswagen's questions on patent marking in correspondence (Ex. B), VDPP finally took a position on marking in response to Volkswagen's motion to dismiss. But VDPP's position—referred to here as the NPE Fallacy—is ungrounded in law. According VDPP, "Plaintiff is not required to mark a product to collect damages because as a non-practicing entity, plaintiff as [*sic*] no product to mark." Dkt. 22 at 5.

This NPE Fallacy is expressly rejected in the caselaw cited in Volkswagen's letter (Ex. A at 2) and motion to dismiss (Dkt. 13 at 3, 5-6). The reason is clear: "A patentee's licensees must also comply with § 287." *Arctic Cat Inc. v. Bombardier Recreational Prods., Inc.*, 950 F.3d 860, 864 (Fed. Cir. 2020) ("*Arctic Cat II*"). Patentees have a pleading burden to show compliance with § 287 to collect past damages, including taking reasonable steps to enforce marking by their

licensees.  *See Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1366-68 (Fed. Cir. 2017) ("*Arctic Cat I*"); *see also Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111-12 (Fed. Cir. 1996) (patentee must make "reasonable efforts to ensure compliance with the marking requirements" by its licensees).  Remarkably, VDPP cited *Arctic Cat II* in support of its NPE Fallacy, Dkt. 22 at 6, even though that same decision expressly explains that it "does not excuse Arctic Cat's lack of marking that it is Arctic Cat's licensee, rather than Arctic Cat itself, who sold unmarked products."  *Arctic Cat II*, 950 F.3d at 864.  Identically here, it does not excuse VDPP's lack of marking that it is VDPP's licensees, rather than VDPP itself, who sold unmarked products.  VDPP's NPE Fallacy is not only contrary to law, but indeed specifically repudiated in caselaw cited by VDPP itself.  Volkswagen's letter explained this caselaw before Volkswagen filed its motion to dismiss.  *See* Ex. A at 2 (discussing *Arctic Cat I* and *II*).  VDPP ignored it.

Indeed, VDPP's briefs *never* articulated any position on patent marking vis-à-vis licensees. The closest VDPP came to addressing *Arctic Cat I* and *II*'s holdings was an incomplete sentence:

> Damages are not limited unless there are tangible articles of the plaintiff that can be marked.5   Plaintiff does not make or sell a patented article and therefore need not comply with Section 287.  Further, Defendant admits Plaintiff has never sold a product.6  Defendant's argument is novel however it has produced no evidence of a patent license for the sale of a product or that any potential

Dkt. 22 at 5.  Of course, nothing was "novel" about *Arctic Cat I*, *Arctic Cat II*, or the other precedent cited in Volkswagen's letter and motion.  *See* Dkt. 23 at 2; *see also* Dkt. 33 at 8-9.

Insofar as VDPP was faulting Volkswagen because it had "produced no evidence of a patent license for the sale of a product" covered by the '452 patent, this would be negligent if not deceitful.  Dkt. 22 at 5.  When VDPP made this argument, it knew or should have known that

*eleven settlement agreements* granted licenses to the '452 patent without any obligation to mark. This proved that Volkswagen was right all along.  Still, VDPP pressed on.

### F.     VDPP Repeats the NPE Fallacy at Oral Argument

On December 8, 2023, the Court held the Initial Conference, including argument on Volkswagen's motion to dismiss. Ex. R.  Counsel for VDPP did not appear for the hearing.  *Id*. at 4:1-11.  At the Court's request, Volkswagen's counsel called VDPP's counsel and after several tries reached them, which allowed the hearing to take place.  *Id*. at 4:12-5:4.

Volkswagen argued that VDPP's complaint should dismissed with prejudice because VDPP had four opportunities to plead compliance with § 287(a), including marking by VDPP's licensees, yet VDPP never made the requisite allegations.  *Id*. at 8:4-10:15.  In response, VDPP again presented the NPE Fallacy: "We believe that under Section 287 that we don't have a duty to respond or to mark.  There is no requirement for EPEs [*sic*] to mark."  *Id*. at 10:19-21.  When the Court asked VDPP for the best authority supporting that theory, VDPP cited *Arctic Cat II* and contended that none of its licensees had "admitted to making an infringing product at all anyway." *Id*. at 11:3-12.[3]  Volkswagen then noted that both *Arctic Cat I* and *II* required marking by licensees, and that VDPP could not disavow its own accusations of infringement in the cases it previously filed and settled.  *Id*. at 11:16-12:10.  VDPP had no response.  To this day, VDPP has never articulated a coherent position on compliance with § 287(a) vis-à-vis its many licensees.

### G.     VDPP Serves Discovery Requests, Twice, Despite the Stay of Discovery

The Initial Conference ended with the Court asking the parties about discovery.  *Id*. at 12:11-14.  Volkswagen proposed a stay of discovery pending a ruling on its motion to dismiss, *id*. at 13:2-6, VDPP agreed, *id*. at 13:7-8, and the Court stayed discovery, *id*. at 13:9-10.

---

[3] This portion of the transcript mistakenly refers to "THE COURT" rather than "MR. KUBIAK."

VDPP soon forgot about this ruling—twice.  On January 10, 2024, VDPP served interrogatories and requests for production of documents to Volkswagen.  Ex. S; Ex. T; Ex. U. Volkswagen reminded VDPP of the stay of discovery, which VDPP acknowledged.  Ex. AA.  Two days later, VDPP again served interrogatories and requests for production of documents.  Ex. V; Ex. W; Ex. X.  Volkswagen again explained that discovery was stayed.  Both sets of discovery were separately signed by VDPP's counsel on different days.  *See* Exs. T & U (Jan. 10, 2024); Exs. W & X (dated Jan. 11, 2024 but served Jan. 12, 2024).

## H.      The Court Dismisses VDPP's Complaint

On March 27, 2024, the Court dismissed VDPP's complaint with prejudice.  Dkt. 33; Dkt. 34.  Regarding marking, the Court referenced VDPP's settled lawsuits involving the '452 patent.  Dkt. 33 at 8.  The Court then rejected VDPP's NPE Fallacy that it was "a non-practicing entity, with no products to mark."  *Id*.  As the Court explained, "even if VDPP 'never makes or sells a patented article' subject to the marking requirement, the court 'may consider whether [VDPP] made reasonable efforts to ensure [its licensees'] compliance with the marking statute' unless the licensing agreement 'expressly states that [licensee] had no obligation to mark.'" *Id*. (citing *Arctic Cat II*, 950 F.3d at 864).  "VDPP must make at least a preliminary showing that these entities marked the patent, but VDPP instead argues incorrectly that it has no such obligation."  *Id*. at 9.  VDPP's proposed amended complaint likewise failed to allege marking by VDPP's licensees and thus proved amendment would be futile.  *Id*. at 11-12.  In fact, as the eleven settlement agreements produced by VDPP demonstrate, *VDPP could never allege compliance with § 287(a)* because there was no marking obligation for any licensee.  *See supra* § III.D.

## I.      Throughout the Case, VDPP Demands Nuisance-Level Settlements

VDPP never asserted a bona fide damages theory.  Instead, it made small settlement demands dwarfed by the cost of defending a patent litigation.  VDPP's first settlement demand—

$49,000—was made via telephone to Volkswagen's local counsel on September 11, 2023. This number dropped to $29,000 on January 23, 2024, with a threat to "raise the ask after the [Court's] decision" on Volkswagen's motion to dismiss. Ex. D. VDPP reiterated on March 21, 2024 that its $29,000 offer remained "on the table," but if Volkswagen's motion was "denied or after we replead we will raise the offer to$59k [*sic*]." Ex. Z

VDPP never concerned itself with the merits of this litigation. Otherwise, it would have rectified its faulty pre-suit investigation, defective complaint, countless mistakes, unfounded legal theories, and discovery errors. Its focus instead was simply extracting a nuisance-level settlement from Volkswagen under the force of cost pressure.

## IV.   LEGAL STANDARDS

In patent cases, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness*, 572 U.S. at 553-54. Exceptionality must be shown by a preponderance of evidence. *See id.* at 557 ("Section 285 demands a simple discretionary inquiry; it imposes no specific evidentiary burden, much less such a high one.").

Courts consider exceptionality based on the totality of circumstances, which "may include 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *In re Rembrandt Techs. LP Patent Litig.*, 899 F.3d 1254, 1277 (Fed. Cir. 2018). When a patentee's "litigation position [i]s baseless" or litigates in an "unreasonable manner," exceptionality may lie. *AdjustaCam, LLC v. Newegg, Inc.*, 861 F.3d 1353, 1361 (Fed. Cir. 2017). Exceptionality may exist where "a party advances an argument that is wholly unsupported by the

law."  *See In re PersonalWeb Techs. LLC*, 85 F.4th 1148, 1155 (Fed. Cir. 2023) ("Here, a straightforward application of *Kessler* barred PersonalWeb's claims."); *see also Inventor Hldgs., LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1377-78 (Fed. Cir. 2017) ("weakness" of legal positions supports exceptionality).  Litigating "in the face of evidence that contradicted" a position may also support an exceptionality finding.  *Bayer CropScience AG v. Dow AgroSciences LLC*, 851 F.3d 1302, 1306 (Fed. Cir. 2017).  Failing to conduct adequate pre-suit diligence may too be exceptional.  *See WPEM, LLC v. SOTI Inc.*, 837 F. App'x 773, 774 (Fed. Cir. 2020) ("*WPEM II*") (affirming § 285 award in view of "frivolous nature of WPEM's infringement position (i.e., the substantive strength of WPEM's litigation position)—an issue that could have easily been foreseen with an adequate pre-suit investigation (i.e., the unreasonable manner in which the case was litigated)."); *see also Thermolife Int'l LLC v. GNC Corp.*, 922 F.3d 1347, 1358 (Fed. Cir. 2019) (affirming § 285 award based on inadequate "pre-filing investigation" of infringement).

Counsel may be jointly and severally liable for attorneys' fees for unreasonably and vexatiously multiplying proceedings.  28 U.S.C. § 1927; *Ratliff v. Stewart*, 508 F.3d 225, 234 (5th Cir. 2007); *Hacienda Records, LP v. Ramos*, No. 2:14-cv-19, 2019 WL 93306, at *7 (S.D. Tex. Jan. 2, 2019).  This requires a showing of bad faith, improper motive, or reckless disregard of their duty to the court.  *See W. Heritage Ins. v. Robertson*, 224 F.3d 764 (Table), 2000 WL 992178, at *5 (5th Cir. 2000) ("Obviously, keeping alive a meritless action in the hopes of obtaining a nuisance settlement is unreasonable.").  Awards under § 1927 require clear and convincing evidence.  *Lawyers Title Ins. Corp. v. Doubletree Partners, LP*, 739 F.3d 848, 872 (5th Cir. 2014).  Of course, in addition to both § 285 and § 1927, the Court has inherent power to award attorneys' fees for such misconduct.  *Iris Connex, LLC v. Dell, Inc.*, 235 F. Supp. 3d 826, 858-59 (E.D. Tex. 2017).

## V.    ARGUMENT

This was not a garden-variety litigation.  The complaint was doomed from the moment it was filed because it asserted nonsensical claims and sought impossible relief.  The thinnest pre-suit investigation would have confirmed VDPP's eleven prior settlement agreements.  Especially for an expired patent like the '452, the spotlight for VDPP should have been on past damages and its limitations, primarily the marking statute.  This investigation never occurred.  *See supra* § III.D.  VDPP's careless approach to filing the case was matched by its inattentiveness thereafter.

### A.    Volkswagen is the "Prevailing Party" Under 35 U.S.C. § 285

A dismissal with prejudice confers "prevailing party" status under § 285.  *Raniere v. Microsoft Corp.*, 887 F.3d 1298, 1303 (Fed. Cir. 2018).  Because Volkswagen's motion to dismiss was granted and VDPP's complaint was dismissed with prejudice, Volkswagen is the prevailing party under § 285.  *Id.*; Dkt. 34.

### B.    This Case is "Exceptional" Under 35 U.S.C. § 285

This entire case would have been avoided had VDPP conducted a reasonable pre-suit investigation regarding its expired '452 patent.  On at least eleven occasions before the case was filed, VDPP licensed the '452 patent.  Exs. G-Q.  None of these license agreements required licensees to mark products with the '452 patent number.  *See supra* § III.D.  Since VDPP could not obtain prospective relief on its expired patent, this lack of marking eliminated any relief VDPP could seek from the Court.  It is now clear that VDPP never reviewed these licenses—and in fact, did not know they existed—because on November 30, 2023, VDPP stated: "*As of this time we have no settlement agreements to disclose.*"  *Id.* (emphasis added).

VDPP itself was aware of the settlement agreements it signed.  *See, e.g.*, Ex. J at 8 (signed by Ronald S. Karpf, VDPP's President).  But this was evidently unknown to VDPP's counsel who made the above misrepresentation.  Even without the unusual circumstance of an expired patent,

VDPP's counsel should have been aware of basic facts of the patent it asserted, including its licensing history. The failure by VDPP's counsel to conduct even this minimal level of pre-suit inquiry supports a finding of exceptionality. *See, e.g., WPEM II*, 837 F. App'x at 774 (affirming § 285 award in view of "frivolous nature" of patentee's infringement position, "an issue that could have easily been foreseen with an adequate pre-suit investigation"); *Thermolife*, 922 F.3d at 1358 (affirming § 285 award based on inadequate "pre-filing investigation" of infringement); *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1328 (Fed. Cir. 2011) (same); *Summit Data Sys., LLC v. EMC Corp.*, C.A. No. 10-749, 2014 WL 4955689, at *3-4 (D. Del. Sept. 24, 2014) (finding exceptionality when a license voided plaintiff's infringement theory). Given the expiration of the '452 patent, "the exercise of even a modicum of due diligence by [VDPP], as part of a pre-suit investigation, would have revealed the weaknesses in its litigation position." *See Blackbird Tech LLC v. Health In Motion LLC*, 944 F.3d 910, 916 (Fed. Cir. 2019) (affirming § 285 award).

The exceptionality of this case is magnified because, not only was VDPP's complaint legally doomed, but Volkswagen alerted VDPP to this early in the case. Ex. A. VDPP failed to address the marking issue, despite Volkswagen presenting it with case-dispositive Federal Circuit precedent. *See supra* § III.B (discussing Exs. A-B). That Volkswagen provided early notice to VDPP of the defects in the case—before Volkswagen filed its motion to dismiss—further supports an exceptionality finding. "[S]uch notice, followed by continuation of litigation, can be a factor in justifying an award of attorney's fees." *Thermolife*, 922 F.3d at 1358 (citing *Nat'l Oilwell Varco, LP v. Omron Oilfield & Marine, Inc*., 676 F. App'x 967, 973 (Fed. Cir. 2017)). What began as a case marred by inadequate pre-suit investigation grew into willful disregard by VDPP.

Another dimension of exceptionality arises from VDPP's inability to ever present a coherent response regarding marking by its licensees. *See supra* § III.E. Throughout the case,

VDPP focused solely on whether VDPP itself sold products but never addressed the products of its licensees. *See* Dkt. 33 at 8-9 (rejecting VDPP's theory). But this fallacy runs contrary to *Arctic Cat I* and *II*—cases cited in Volkswagen's letter (Ex. A), in the parties' briefing (Dkt. 13 at 3, 7; Dkt. 22 at 5-6), and the Court's opinion (Dkt. 33 at 8). When pressed at the Initial Conference, VDPP was unable to defend this theory. *See supra* § III.F.

Numerous cases find that a party's legally-baseless positions support findings of exceptionality. *See, e.g.*, *AdjustaCam*, 861 F.3d at 1361 (explaining that exceptionality may arise where patentee's "litigation position [i]s baseless" or patentee litigates in "unreasonable manner"); *PersonalWeb*, 85 F.4th at 1155 ("Here, a straightforward application of *Kessler* barred PersonalWeb's claims."); *Inventor Hldgs.*, 876 F.3d at 1377-78 (explaining "weakness" of patentee's legal positions may support finding of exceptionality); *Porter v. Farmers Supply Service, Inc*., 790 F.2d 882, 887 (Fed. Cir. 1986) (imposing § 285 liability on appeal for party who made "no true effort to distinguish authorities cited by the district court and by appellee which squarely reject" party's arguments). VDPP's NPE Fallacy has the same hallmarks.

VDPP's complaint made other frivolous allegations. Despite asserting an expired patent, VDPP sought impossible relief such as damages for future infringement and an injunction. *See supra* § III.A. Inexplicably, VDPP *repeated* these errors even in its proposed amended complaint. *See* Dkt. 22-1 ¶ 10 (Volkswagen "continues to" directly infringe), ¶ 11 (Volkswagen "will continue to" infringe), § VI.e (Volkswagen is liable for "future infringement"), *id*. (seeking a "permanent injunction"). VDPP also sought damages for indirect and willful infringement despite never alleging Volkswagen knew of the '452 patent while it was in force. *See supra* § III.A. Each of these claims was legally impossible in the original complaint, and each was repeated even after Volkswagen moved to dismiss. Dkt. 13 at 5, 9-10. VDPP paid no attention.

VDPP's countless oversights underscore the exceptionality of this case. Its complaint contained typos ranging from the title to the allegations of venue, and got basic facts wrong about Volkswagen's corporate status. *See supra* § III.A. VDPP was unaware of the eleven prior licenses to its patent until prompted by Volkswagen to discover them. *See supra* § III.D. VDPP served initial disclosures pertaining to an unrelated patent. *Id*. VDPP failed to appear (until reminded) for the Court's initial conference. *See supra* § III.F. And on two occasions VDPP signed and served discovery requests after the Court stayed discovery. *See supra* § III.G. While occasional mistakes are understandable, VDPP's persistent carelessness—at times involving critical, dispositive issues—further supports an exceptionality finding. *See, e.g.*, *IPVX Patent Hldgs., Inc. v. Voxernet LLC*, No. 5:13-cv-01708, 2014 WL 5795545, at *6 (N.D. Cal. Nov. 6, 2014) (finding that patentee "'carelessly' served discovery requests that had nothing to do with the" accused technology, which supported exceptionality finding); *Soar Tools, LLC v. Mesquite Oil Tools, Inc*., No. 5:19-cv-243, 2022 WL 1447946, at *10-11 (N.D. Tex. Feb. 9, 2022) (finding exceptionality in light of plaintiff's citation to incorrect photos of accused product, and "carelessness" of plaintiff's counsel in filing improper brief that was struck); *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1380 (Fed. Cir. 2009) (affirming exceptionality finding based in part on patentee's misrepresentations); *Iris Connex*, 235 F. Supp. 3d at 851 ("Another reason supporting the exceptionality of this case is the admitted sloppiness in prosecuting this case").

VDPP's requests for nuisance-level payments to settle the case also support a finding of exceptionality. *See supra* § III.I (settlement demands of $49,000 and $29,000). Where, as here, a patentee presents frivolous claims and demands settlement figures well below the cost of litigation, courts may find exceptionality. *See AdjustaCam*, 861 F.3d at 1361-62 (patentee's demand for "nuisance-value damages" in view of "frivolous infringement argument and unreasonable manner

of litigation" supported § 285 finding); *Blackbird*, 944 F.3d at 916 (patentee's "'multiple settlement demands that were far less than the anticipated cost of defense,' i.e., nuisance value settlement offers," supported § 285 finding).  As the Court explained in *TechRadium, Inc. v. FirstCall Network, Inc*., one factor that may support an exceptionality finding is when "the plaintiff initiated the litigation to extract settlements from defendants to avoid costly litigation."  No. H-13-2487, 2015 WL 862326, at *6 (S.D. Tex. Feb. 27, 2015).  VDPP's arbitrary and nuisance-level settlement demands of $49,000 and $29,000 bore no connection to a bona fide damages theory. Instead, they were simply amounts below the cost of defense.  This factor thus also favors a finding of exceptionality.  *See Iris Connex*, 235 F. Supp. 3d at 850 (finding that low settlement demands supported exceptionality finding since plaintiff was either "trying to obtain settlements driven by litigation costs rather than the merits of this case, or it realized that its infringement position was extraordinarily weak.").

Similarly, the number of lawsuits filed by a patentee asserting a particular patent may indicate exceptionality.  *See Rothschild Connected Devices Innovations, LLC v. Guardian Protection Servs., Inc.*, 858 F.3d 1383, 1389 (Fed. Cir. 2017) (finding that assertion of claim in "fifty-eight cases against technologies ranging from video cameras to coffeemakers to heat pumps" supported finding of "vexatious litigation" and liability under § 285).  Here, VDPP has asserted the '452 patent in twenty-one cases, ten of which have apparently settled and been terminated. The accused technologies in these cases range from vehicles,[4] to video projectors,[5] to computer

---

[4] *See, e.g., VDPP, LLC v. Mazda Motor of Am., Inc.*, No. 8:24-cv-00571 (C.D. Cal.).
[5] *See, e.g., VDPP LLC v. NEC Corp. of Am.*, No. 3:24-cv-00566 (N.D. Tex.).

monitors,[6] to mobile phones and tablets,[7] to video calling devices,[8] to baby monitors.[9]  The present action involving Volkswagen is the first to reach any decision on the merits.  More broadly, VDPP has filed a total of 58 cases involving the '452 patent or a family-counterpart patent.  The number of suits VDPP filed, their early terminations via apparent settlement, and the varied technologies accused in them supports an exceptionality finding.  *Rothschild*, 858 F.3d at 1389; *see also Iris Connex*, 235 F. Supp. 3d at 850; *IPVX*, 2014 WL 5795545, at *7 ("Of the dozens of cases IPVX or its predecessor has filed, only this case has reached a decision on the merits. . . .  From the litigation conduct in this case, it appears that IPVX is actually not willing to invest the resources to prove up its infringement case.").

Lastly, there is a strong need for deterrence in this case.  VDPP's counsel has previously been found to file exceptional lawsuits under § 285.  For example, in *WPEM, LLC v. SOTI Inc.*, the Eastern District of Texas awarded attorneys' fees under § 285 against a patentee represented by VDPP's counsel on grounds of a deficient pre-suit investigation.  No. 2:18-cv-00156-JRG, 2020 WL 555545, at *3 (E.D. Tex. Feb. 4, 2020) ("*WPEM I*"), *aff'd*, 837 F. App'x 773 (Fed. Cir. 2020) ("WPEM conducted absolutely no pre-filing investigation into the validity or enforceability of the Asserted Patent.").  In addition, in *NetSoc, LLC v. Chegg Inc*., the Southern District of New York awarded attorneys' fees under § 285 against a patentee represented by VDPP's counsel because the complaint asserted incorrect patent claims.  No. 18-cv-10262, 2020 WL 7264162, at *4 (S.D.N.Y. Dec. 10, 2020) ("Plaintiff ignored the deficiency in its pleading of the '107 Patent claims for approximately three months after being informed of the error.  This alone makes this case

---

[6] *See, e.g., VDPP, LLC v. HP, Inc*., No. 7:24-cv-00068 (W.D. Tex.).
[7] *See, e.g., VDPP LLC v. TTE Tech., Inc*., No. 5:19-cv-02019 (C.D. Cal.).
[8] *See, e.g., VDPP LLC v. Facebook Techs., LLC*, No. 3:19-cv-04597 (N.D. Cal.)
[9] *See, e.g., VDPP LLC v. Motorola Mobility LLC*, No. 1:22-cv-03280 (N.D. Ill.).

'stand out' from others.").  Another example is *ZT IP, LLC v. VMware, Inc.*, where a client of VDPP's counsel was liable for attorneys' fees under § 285 due to another faulty pre-suit investigation.  No. 3:22-cv-0970, 2023 WL 1785769, at *2 (N.D. Tex. Feb. 6, 2023) ("Either ZT frivolously cited a document that it did not review, or ZT reviewed the document and saw the date but ignored it.").  The *ZT* court referenced *WPEM I*, explaining that "[t]he standard for an exceptional case does not change based on counsel's previous failures; however, a previous warning about certain pre-filing failures aids the Court in finding frivolousness, motivation, and the need to advance considerations of compensation and deterrence."  *Id*. at *3.  Additional examples of attorneys' fees against the patent clients of VDPP's counsel abound.[10]  Considering these numerous examples of exceptional cases involving VDPP's counsel, there is a heightened need to deter the continued filing of meritless cases like this and a need to compensate Volkswagen for having to defend the case.  *See Rembrandt*, 899 F.3d at 1277; *Inventor Hldgs*., 876 F.3d at 1377-78; *Thermolife*, 922 F.3d at 1362.

### C.    VDPP and its Counsel Should Jointly and Severally be Liable Under 28 U.S.C. § 1927 and the Court's Inherent Authority

VDPP should be held liable under § 285 for attorneys' fees in this case, as discussed above. In addition, Volkswagen asks that VDPP's counsel be held jointly and severally liable with VDPP

---

[10] *See, e.g., EscapeX IP LLC v. Google LLC*, No. 22-cv-08711, 2023 WL 5257691, at *1 (N.D. Cal. Aug. 16, 2023) ("Google placed EscapeX on notice of the baselessness of its claim early and often, urging it to dismiss the case. . . .  But EscapeX pressed on."); *Traxcell Techs., LLC v. Huawei Techs. USA, Inc*., No. 2:17-cv-42, 2023 WL 2625948, at *2 (E.D. Tex. Mar. 24, 2023) (awarding § 285 attorneys' fees for patentee prolonging litigation after it "became unreasonable because it no longer had any viable argument relating to claim construction pending before the Court."); *Ortiz & Assocs. Consulting, LLC v. VIZIO, Inc.*, No. 3:23-cv-00791, 2024 WL 815553, at *1 (N.D. Tex. Feb. 27, 2024) ("The expired patents could not give rise to future damages, and Ortiz was apprised of the need to plead compliance with 35 U.S.C. § 287(a) to support its claim for pre-suit damages in VIZIO's first motion to dismiss but failed to do so."); *Verna IP Hldgs., LLC v. Alert Media, Inc*., No. 6:21-cv-00422, 2023 WL 5918320, at *4 (W.D. Tex. Sept. 11, 2023) (finding case exceptional based on patentee's continued litigation after adverse claim construction).

pursuant to 28 U.S.C. § 1927 and the Court's inherent authority. This is necessary to serve the interests of both § 285 and § 1927, including justice, deterrence, and compensation. Because VDPP's counsel has a financial stake in this case, Dkt. 4, and is singularly responsible for the negligence addressed above, holding only VDPP liable would be meaningless. VDPP could dissipate its funds (if any) before Volkswagen is compensated, and VDPP's counsel would be encouraged to file additional exceptional cases, such as *WPEM*, *NetSoc*, *ZT*, *EscapeX*, *Traxcell*, and *Ortiz*.

Fees under § 1927 are appropriate when counsel acts in bad faith, with improper motive, or recklessly disregards their duty to the Court. *Heritage*, 2000 WL 992178, at \*5. These factors exist here. For example, courts find that "[c]ounsel's failure to reasonably investigate plaintiff's claim or material produced in discovery, which would have revealed the claim's lack of merit, is bad faith litigation." *Heritage*, 2000 WL 992178, at \*5 (citing *Blue v. U.S. Dept. of Army*, 914 F.2d 525, 542 (4th Cir. 1990)). That happened here. VDPP's counsel should have conducted a pre-suit investigation that at least generated awareness of VDPP's prior litigations and settlements, but it failed to do so. *See supra* § III.D. Omitting this investigation, VDPP's counsel falsely represented that no licenses exist, when in fact *eleven* licenses exist that are case-dispositive. *Id*. VDPP's counsel also asserted frivolous and legally-impossible claims, refused to dismiss or amend them after notice by Volkswagen, and proceeded in the case with disregard to Court orders and a hearing. *See supra* §§ III.A-B, F-G. When a cursory review of the facts and law would have revealed that no remedy is possible, continuing to litigate warrants an award of attorneys' fees. *See Royal Oak Entm't, LLC v. Royal Oak, Mich*, 486 F. Supp. 2d 675, 677 (E.D. Mich. 2007), *aff'd*, 316 F. App'x. 482 (6th Cir. 2009). As in *Royal Oak*, here VDPP's counsel "failed to address [controlling] precedent" and "should have been aware of the law governing their federal claims

and, at the very least, withdrawn them once [Volkswagen] highlighted the claims' lack of legal foundation in their motion to dismiss." *Id.* at 677-78; *see also Hacienda*, 2019 WL 93306, at *6; *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 363 (S.D.N.Y. 2006), *aff'd*, 249 F. App'x. 845 (2d Cir. 2007) (bad faith to press claims violating clear statutory language).

Further, "keeping alive a meritless action in the hopes of obtaining a nuisance settlement in unreasonable." *Heritage*, 2000 WL 992178, at *5 (citing *Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998)). Here, VDPP's counsel made plain from the outset that its focus was collecting payment, never the merits of its case. As discussed above, for example, VDPP's counsel never tried to cure the fatal errors of its complaint and continued to press nonsensical claims (such as a permanent injunction on an expired patent) after repeated warnings from Volkswagen. *See supra* §§ III.A, B, C. VDPP's counsel violated its own agreement, twice serving discovery after agreeing to stay it. *See supra* § III.G. VDPP's counsel failed to appear at a dispositive motion hearing. *See supra* § III.F. VDPP's counsel also disregarded the Court's initial disclosure requirements, failing to produce required discovery before eventually finding *eleven agreements* confirming the futility of its own case. *See supra* §§ III.D, F; *see also Hacienda*, 2019 WL 93306, at *6 (failing to produce key documents). VDPP's counsel could have voluntarily dismissed its case *at any time* during these developments. Fed. R. Civ. P. 41(a)(1). It did not. It only asked for money. *See supra* § III.I. Here, VDPP's counsel failed to "produce key [] documents" despite "telling [Volkswagen] that all responsive documents had been produced," failed to "reasonably investigate plaintiff's claim," and "refused to dismiss frivolous claims." *Hacienda*, 2019 WL 93306, at *6 (collecting cases).

On this record, holding VDPP's counsel jointly and severally liable with VDPP is the only way to avoid an unjust result that fails to comport with § 285 and § 1927. *See W.W. Home Prods.,*

*Inc. v. Bed, Bath & Beyond, Inc.*, No. 11-cv-3633, 2015 WL 1573325, at *5 (S.D.N.Y. Apr. 9, 2015) (analyzing § 1927 in tandem with § 285); *SunTiger Inc. v. Telebrands Advert. Corp.*, No. 97-423, 2004 WL 3217731 at *6-7 (E.D. Va. Mar. 29, 2004) (finding a § 1927 violation based on § 285 conduct); *see also Iris Connex*, 235 F. Supp. 3d at 858-59 (finding that non-party actor "and his conduct also fall within the purview of the Court's inherent power" based on conduct giving rise to exceptionality). VDPP's self-declared business is "MONETIZATION OF US PATENTS." Ex. Y at 1. Those standing to gain from this monetization include VDPP's two members (Ronald Karpf and Kenneth Jacobs), *id*. at 1-2, and its counsel which has a financial stake in this case, Dkt. 4. Given this arrangement, and the lack of any other apparent business activity engaged in by VDPP, it would be illogical for VDPP to maintain funds sufficient to cover awards of attorneys' fees. The only logical sequence that would fulfill VDPP's stated business purpose and benefit those with an interest in it would be for all settlement proceeds to immediately be paid out to Mr. Karpf, Mr. Jacobs, and VDPP's counsel. Volkswagen thus fears that any funds VDPP obtains via settlement vanish upon receipt. Indeed, this concern is consistent with *Iris Connex*, where the plaintiff was an undercapitalized "empty shell" designed to insulate its beneficiaries against § 285 awards. 235 F. Supp. 3d at 851.

Because the negligence giving rise to exceptionality here stems specifically from VDPP's counsel, it is appropriate for them to be held jointly and severally liable with VDPP under § 1927 and the Court's inherent power. *Heritage*, 2000 WL 992178, at *5; *Hacienda*, 2019 WL 93306, at *6; *Baker*, 431 F. Supp. 2d at 363; *Iris Connex*, 235 F. Supp. 3d at 858-59.

### D.    If the Court Grants this Motion, Volkswagen Respectfully Requests an Accounting at that Time

Volkswagen respectfully requests that, if the Court grants this motion, it allow Volkswagen to submit evidence of its attorneys' fees at that time. *See, e.g.*, *Chaffin v. Braden*, Civ. A. No.

6:14-27, 2016 WL 4076705, at *4 (S.D. Tex. Aug. 1, 2016), *reversed on other grounds*, 696 F. App'x 1001 (Fed. Cir. 2017) (granting attorneys' fees and permitting defendants to submit supporting documentation within 25 days); *Mata v. Caring for You Home Health, Inc.*, 94 F. Supp. 3d 867, 880 (S.D. Tex. Mar. 27, 2015) (awarding attorneys' fees and allowing prevailing party to file supporting documentation within 21 days); *Ortiz*, 2024 WL 815553, at *3 (ordering submission of evidentiary support for fees award).   For the Court's reference, presently Volkswagen's counsel has submitted invoices totaling $121,518 in this litigation.

## VI.   CONCLUSION

For the foregoing reasons, the Court should grant Volkswagen's motion and declare this case exceptional under 35 U.S.C. § 285.  The Court should find VDPP and its counsel jointly and severally liable, and allow submission of evidence by Volkswagen to establish the amount and reasonableness of the fees it incurred defending this case.

Dated: April 10, 2024 Respectfully submitted,

TRENT & TAYLOR, LLP

By: /s/      *T. Christopher Trent*
    T. Christopher Trent
    Federal ID No. 14244
    State Bar No. 20209400
    919 Milam, Suite 1500
    Houston, TX 77002
    (713) 222-2323 – Telephone
    (713)222-2226 - Fascimile
    Email: ctrent@trent-law.com

ATTORNEY-IN-CHARGE FOR DEFENDANT
VOLKSWAGEN GROUP OF AMERICA, INC.

OF COUNSEL

Elliot C. Cook (pro hac vice)
Joseph M. Schaffner (pro hac vice)
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
1875 Explorer Street, 8th Floor
Reston, VA 20190-6023
(571) 203-2700 – Telephone
elliot.cook@finnegan.com
joseph.schaffner@finnegan.com

COUNSEL FOR DEFENDANT
VOLKSWAGEN GROUP OF AMERICA, INC.

## <u>CERTIFICATE OF CONFERENCE</u>

I hereby certify that, pursuant to Local Civil Rule LR7.1(D) on April 10, 2024, counsel

for the parties met and conferred telephonically in an effort to discuss the present motion, and

confirmed that VDPP opposes this motion.

*/s/      T. Christopher Trent*
T. Christopher Trent

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 10, 2024, a copy of the foregoing was filed electronically.

Notice of this filing will be sent to all parties of record by operation of the Court's electronic

filing system pursuant to the Federal Rules of Civil Procedure. Parties may access this filing

through the Court's system.

*/s/      T. Christopher Trent*
T. Christopher Trent